THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ISRAEL RODRÍGUEZ MARRERO, Defendant and Appellant.

No. CR-64-24.    Decided May 29, 1964.

476

*Eugenio Alemañy Fernández* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The prosecuting attorney accused Francisco Antonio Morales, alias El Piloto, Miguel Ángel Collado Acosta, alias Arenas, Juan Ramos Flores, alias El Menor, and Israel Rodríguez Marrero, known as Felipe Rodríguez, in the Superior Court, Mayagüez Part, of murder in the first degree, committed on January 14, 1963, in a ward of the Municipality of Lajas, on the person of Alfredo Alvarado Camacho.

The information alleged, among other things, that all the defendants committed the crime acting jointly and in common agreement and while committing robbery.

Subsequently, codefendant Israel Rodríguez requested and obtained a separate trial. The trial was by jury. His plea was alibi. The People introduced oral evidence consisting of the testimony of nine witnesses and that of the medical expert, Dr. Padilla, and in addition presented in evidence seven photographs, several objects seized during the preliminary investigation of the case, and defendant's confession. Defendant offered his mother's testimony to sustain his plea of alibi.

The jury rendered a verdict of murder in the first degree, and defendant was sentenced to life imprisonment.

We have read and analyzed with all the diligence required in appeals involving the most serious of the crimes defined in our Penal Code, the 239 pages of the transcript of evidence. The piece of evidence of greatest incriminatory force is, doubtlessly, the free and voluntary statement rendered by defendant immediately after the commission of the crime, in which, very clearly and precisely, he confessed his participation in the diabolical plans which resulted in the murder of Alfredo Alvarado Camacho.

Insofar as pertinent, the text of defendant's testimony is as follows:

"Q. Raise your right hand. Do you swear to tell the truth and nothing but the truth? A. I do. Q. You are warned that you are being investigated in relation to the death of Alfredo Alvarado Camacho, which occurred on January 14, 1963, during the night of said day in the ward Lajas in Lajas. You are also warned that you have the right to testify or abstain from testifying and that everything you say before me may be used in your favor or against you. Said warnings having been made I ask: Do you want to testify? A. Yes. Q. I ask you again whether any person has compelled you to testify? A. Nobody, nobody. Q. Whether any person has threatened you to testify? A. Nobody. Q. Whether any person has made any promise in

order that you testify? A. No, sir. Q. Are you going to testify freely and spontaneously? A. Yes, sir. Q. Do you know Miguel Angel Collado Acosta k/a Guelo, k/a Arena? A. Yes, sir. Q. Do you know Juan Ramón Flores k/a Moncho? A. Yes, sir. Q. And Francisco Antonio Morales Irizarry k/a Piloto? A. Yes, sir. Q. Are you friends? A. Yes, sir. Q. Did you meet on January 14, 1963? A. Yes, sir. Q. About what time? A. About 12:20 under the tree in the public square in Lajas, I arrived first and then Arenas with Flores. Then Arenas said: 'Is Piloto going to come?' then Piloto arrived. Q. Did you agree to do something there? A. We already knew what we were going to do because Arenas had planned it. Q. What had you planned? A. That Alfredo had drawn money from the Bank and we were going to hold him up for Arenas to get married. Q. Should I understand, then, that the plan was to hold up Alfredo to take the money away from him? A. Yes, sir. Q. Did you know where Alfredo used to go? A. Arenas knew it because he lived nearby. Q. Did Arenas tell you where Alfredo went to cut grass? A. Yes, sir. Q. To what place did Arenas say that Alfredo used to go? A. He went near the edge of a sugarcane field to remove the weeds and cut Para grass. Q. About what time did you reach an agreement? A. About half past twelve. Q. When did you meet again? A. We met at the square at half past three and then we left. Q. When you met at half past twelve and half past three, were the four of you alone? A. Yes, the four of us alone, at that time of the day nobody is around. Q. You do not remember whether anyone saw you? A. No. Q. What did you agree upon at half past three? A. To meet at four for the holdup. Q. What did you do at four? A. We went to the place. Q. Did you find Alfredo at that time? A. He arrived by another way, I told Arenas: 'Arenas, there is the man.' Then he was with his back toward us, then Flores told me: 'as you are a coward you stay and watch.' Q. At that time, did you see when Alfredo went to take some coffee to José? A. I did not see that. Q. About what time did you attack him? A. About five o'clock, when he was cutting the grass. Q. What did you do to attack him? A. Arenas was carrying a pipe fastened through his belt, then he hit him on his forehead and he said: 'why do you do this?', then Flores took the money from his wallet and kept it. Q. Did they take any more money away from him? A. I only noticed what was in the wallet. Q. Did you see when Arenas

took the money and hid it in a sugarcane field? A. Arenas gave it to Flores, to hide it. A. Was Arenas present when Flores hid the money? A. He was. Q. Did they take out money from the plastic bag? A. No, sir. Q. Besides Arenas who else hit him with the pipe? A. Only Arenas. Q. Is it not true that Flores hit him with the pipe also? A. Flores was only going to take the wallet. Q. Who was wearing gloves? A. Flores, to avoid leaving fingerprints, he said. Q. Did Alfredo fall to the ground? A. Yes. Q. Did you see whether Alfredo was carrying some bags for the grass? A. Yes. Q. What did you do with those bags? A. Arenas covered him with a bag and Flores used another to cover his face. Q. See whether these gloves were the ones that Flores was wearing? A. Yes, sir. Q. Did Alfredo attack anybody at any time? A. Yes, but Arenas evaded it and he hit him with the pipe and he fell to the ground. Q. Alfredo could never protect himself because he fell to the ground after the first blow with the pipe? A. Yes. I said to myself: 'Heavens, what these people are doing here.' Q. Did you know that Alfredo used to carry money with him? A. Arenas told me that Flores had drawn money from the bank and he was carrying it with him. Q. Do you remember whether you went to police headquarters on Tuesday, at the commencement of the investigation of these events? A. Yes. Q. And that you made a sketch of Piloto there? A. Yes, sir. Q. Had you and Arenas planned to accuse Piloto only? A. Yes, both of us had agreed to accuse Piloto as the killer of Alfredo. Q. Was that why when Arenas was accusing Piloto because you did not remember his name, you made a sketch of Piloto? A. Yes, sir. Q. Now, the truth is that the four of you were there? A. Yes. Q. Did you see whether on that afternoon Arenas was at the house of his uncle José? A. I do not know. Q. Did not Arenas say that he had seen Alfredo at José's house? A. I did not hear it. Q. In addition to the bags and the rope, what else did you see Alfredo carrying besides the wallet and the bag? A. He was carrying a handkerchief with his coat. Q. Was that the handkerchief found in the field? A. Yes, sir. Q. Was he not carrying some pieces of pencils? A. I did not notice. Q. Were you near Alfredo when he was hit with the pipe? A. A little near. Q. Were your clothes stained with blood? A. No. Q. Where did you go after the event? A. I went home and took off my shirt, but it was not stained with blood. Q. Did you meet again after that night?

A. About 8:00 p.m. Q. Where did you meet? A. In front of the theater. Q. Who met there? A. I and Arenas. Q. Besides that time, did you meet again on Tuesday when the investigation of the facts started? A. Yes, sir. Q. When you and Arenas met in front of the theater, did you agree on a plan to accuse any person? A. No, sir. Q. When did you agree to accuse Piloto? A. On Tuesday. Q. Before Monday, had Piloto and Arenas been together? A. Yes, sir. Q. Do you know Juan Ramón Flores Rivera, El Menor? A. Yes, sir. Q. And did you know that El Menor had come from the United States? A. Yes, sir. Q. Had El Menor told you that he belonged to a gang in the United States? A. Yes, sir. Q. Where was Alfredo hit? A. On the head. Q. And on his cheek? A. Piloto cut him with something he was carrying in his pocket, but I could not see whether it was a knife or a pocket knife. He told me he was carrying a sharp weapon. Q. Did you see whether someone stabbed Alfredo with the handle of a file? A. I did not see it. Q. But did you see a file there? A. I did not see it either. Q. After killing Alfredo, did you not divide the money among you? A. No, because Arenas told us to put it away. Q. Did he say when the money was going to be divided? A. Two or three months later. Q. But El Menor took the money from the red wallet? A. Yes, sir, but he kept that money. Q. Did El Menor threaten you at any time not to say anything? A. No, never. Q. Did you see El Menor threaten anybody in your presence? A. No, sir. Q. Is that all you want to testify or do you want to testify some more? A. That is all."

On appeal, appellant maintains that the trial court erred: (1) in permitting the introduction of evidence as to the conduct, acts and statements of Miguel Ángel Collado Acosta, alias Arenas, without it being alleged in the information that said person acted jointly with defendant in the commission of the facts; (2) in deciding that defendant's statement was offered voluntarily, and (3) in permitting the amendment of the information to conform to the evidence introduced, in violation of the provisions of Rule 38 of Criminal Procedure of 1963. In our judgment none of the errors were committed.

1. It is true that in their testimony several witnesses for the prosecution referred to some of the other defendants' conduct, but defendant-appellant was not incriminated thereby. When he could have been, the timely objection of his clever attorney effectively prevented it, the trial court not permitting, with great zeal, that defendant-appellant's interests be prejudiced in such manner.

No incrimination appears neither from the testimony of witness José Collazo, uncle of Miguel Ángel Collado, alias Arenas—Tr. Ev. 14–40; nor from that of policeman Armando Irizarry Pagán—Tr. Ev. 66–75—concerning defendant-appellant. The former merely testified in relation to defendant that he did not know defendant and that "I see him today, and had seen him in town, but I did not know who he was." (Tr. Ev. 26.) As to the acts of defendant-appellant himself—also known as Felipe Rodríguez—policeman Irizarry Pagán testified to the following:

"Q. On January 15, 1963, and while this case was under investigation, did you speak to defendant Felipe Rodríguez?

A. Felipe Rodríguez arrived at police headquarters accompanied by another young man.

Q. What was the young man's name?

A. I knew him as Arenas.

Q. That is, Miguel Ángel Collado himself, known as Arenas?

A. Yes, sir. When they arrived I asked them what they wanted, and they said . . .

Q. What did Israel say?

A. Israel said he had seen a man wandering near the sugarcane plantation where the dead man was found, and that he could sketch him, draw him. He was given a piece of paper and he drew him. I asked him what his name was and he said they called him Piloto.

Q. Do you say that at police headquarters he sketched said person, whom he identified as Piloto?

A. Yes, sir.

Q. And did he arrive there with Arenas?

A. Yes sir."

■ After his confession was admitted, which obviously reveals the plot or common design to rob Alfredo Alvarado Camacho, the actions of each of the conspirators according to said plot and the actions of appellant himself which he had to execute, the acts and statements of the conspirators in the course and furtherance of the conspiracy which were revealed at the trial, were admissible. *People* v. *Castro*, 75 P.R.R. 630, 639 (1953).

■ It would have been more proper for the prosecuting attorney to repeat in the information, which he later filed separately against defendant-appellant, the allegation of common design or plot. Yet, from the first information defendant-appellant was already informed of said design or common plot, which origin and execution he himself revealed in his extensive confession. The discovery, at the trial, of facts which occurred during the course and in furtherance of the conspiracy should not constitute surprise to him.

■ 2. In his brief, appellant admits "that there is a clear conflict in the evidence as to the voluntariness of said statement given by defendant, which was decided against him." From the testimony of the five persons examined on this point, among which is that of appellant himself, there are no circumstances which would offer real probatory value to the evidence offered by the defense as to the involuntariness of his confession on the basis of physical or psychological coercion. We do not find a worthy basis to alter the trial court's decision on the voluntariness of said confession.

3. The trial was held on August 5 and 6, 1963. The Rules of Criminal Procedure of 1963 were already in force. No. 38(d) provides:

"*Variance between Pleadings and the Evidence.* The court may allow amendments to be made to the information, complaint or to a bill of particulars at any time before the conviction or acquittal of the defendant, in case there is a variance between these pleadings and the evidence. The variance between the

pleadings and the evidence shall not constitute grounds for the acquittal of the defendant; but the court shall, provided the defendant does not oppose it, postpone the trial if the substantial rights of the defendant have been impaired, to hold it before another jury or before the same court if the trial is not by jury, and as determined by the court.

"If the discrepancy or variance is of such nature that the evidence establishes an offense different from the one charged against the defendant, and not included therein, or if it establishes an offense beyond the jurisdiction of the court, the jury shall be discharged and the case shall be dismissed."

After his evidence had been introduced and prior to the introduction of the evidence for the defense, the prosecuting attorney requested leave to amend the information pursuant to Rule No. 38(d) copied above, in the following manner:

"Hon. Prosecuting Attorney: I mean, Your Honor, Your Honor already overruled yesterday the allegation of the defense in the sense that evidence of the supposed agreement or conspiracy planned by this defendant and the other persons who participated in the facts of this case could not be introduced. Your Honor overruled it.

"And, Your Honor, one of the prosecuting attorney's allegations is that, precisely in the original information, which was filed jointly against the four defendants, the plot and the agreement planned by them was mentioned. And not only was evidence introduced in relation to that agreement or original plot, but also defendant himself in his confession controverts what my colleague for the defense has said, when defendant stated that he entered into said plan or conspiracy to assault Alfredo Alvarado Camacho for the purpose of stealing the money he was carrying with him.

"We understand that the evidence is completely sufficient and that defendant's contention does not lie. Moreover, in the event there exists any variance between the evidence and the pleadings pursuant to the new Rules, the prosecuting attorney may request that the information be considered amended to conform to the evidence offered.

"............

"Then, Your Honor, we are going to request that the infor-

mation be considered amended in this case to conform with the evidence, pursuant to the new Rules of Criminal Procedure, in order that the information shall read that this defendant acted jointly and in common agreement with Ramón Flores Rivera known as El Menor, with Miguel Ángel Collado known as Arenas and Guelo, and with Francisco Antonio Irizarry Morales known as Piloto . . . acting jointly and by common agreement assaulted and battered the victim, Alfredo Alvarado Camacho, for the purpose of stealing from him, showing a wicked and perverse heart, assaulted and battered him with an iron pipe and sharp weapons, which are deadly weapons, causing him several contusions and incised wounds of a serious nature when they took possession of the amount of $1,176.58 which was taken from said Alfredo Alvarado Camacho, against his will, the contusions and incised wounds of grave nature which defendant herein caused to him, being the cause of the death of said Alfredo Alvarado Camacho on January 14, 1963."

The defense objected alleging that the variance between the pleadings and the evidence was fundamental and that the amendment was prejudicial to him.

The trial court decided the following:

"Hon. Judge: After examining Rule No. 38 of the Rules of Criminal Procedure recently approved, in subdivision (d) on the variance between pleadings and the evidence, and because it understands that the amendment does not impair defendant's substantial rights, in view of the fact that the latter was originally accused jointly with the other codefendants or accomplices, and it was alleged in said information that he acted jointly and in common agreement with them, and that if a separate information has been filed it was at the request of defendant himself, the court sustains the request of the prosecuting attorney and orders the amendment to the information to conform to the evidence introduced."

█ Under the concurring circumstances in the case, we consider the action of the trial court correct in permitting the amendments to conform the information to the evidence for the prosecution and, essentially, on the basis of defendant-appellant's own confession. The rule itself provides that "The

variance between the pleadings and the evidence shall not constitute ground for the acquittal of the defendant," although in such case the trial may be postponed if the court is of the opinion that the substantial rights of the defendant have been impaired. We have already seen that the court was of the opinion that his rights had not been impaired.

The judgment appealed from will be affirmed.